Entered on Docket
February 23, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: February 22, 2010

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>LCGI FAIRFIELD, LLC,<br><br>    Debtor-in-Possession.<br>_____/ | No. 09-48466 T<br>Chapter 11 |
| In re<br><br>LCGI VICTORVILLE, LLC,<br><br>    Debtor-in-Possession.<br>_____/ | No. 09-48617 T<br>Chapter 11<br><br>(Jointly Administered) |

**MEMORANDUM OF DECISION**

The motion of General Electric Asset Business Funding Corporation ("GE Capital")[1] to dismiss the above-captioned chapter 11 cases came before the Court on February 16, 2010. The above-

---

[1] The Debtors contend that GE Capital lacks standing to bring this motion. They note that secured creditors scheduled are GE Capital Franchise Finance Corporation CEF Funding IV, LLC. None of these entities has filed a proof of claim. The Court notes that the motion describes the moving parties as General Electric Capital Asset Business Funding Corporation f/k/a GE Capital Franchise Finance Corporation, on behalf of itself as sub-servicer and agent for CEF Funding IV, LLC, together with GE Capital. Therefore, even if GE Capital has no standing to bring the motion, the other two entities do. The Court will refer to the moving party as GE Capital for convenience.

captioned debtors (the "Debtors") opposed the motion. At the conclusion of the hearing, the Court took the motion under submission. Having considered the issues, the Court concludes that the motion should be denied.

## SUMMARY OF FACTS AND PROCEDURAL BACKGROUND[2]

In 2002, GE Capital loaned the former owner of real property located in Fairfield, California (the "Fairfield Property") approximately $1.7 million, payable over ten years, secured by a first deed of trust. Interest was to accrue at the rate of 3.5 percent per annum above the one month London Interbank Offered Rate ("LIBOR") published in the Wall Street Journal on the last business day of each month.

In 2004, Imperial Capital Bank ("Imperial") loaned the former owner of real property located in Victorville, California (the "Victorville Property") approximately $2 million, payable over twenty years, secured by a first deed of trust.[3] Interest was to accrue at the rate of 5 percent per annum above the six month London Interbank Offered Rate ("LIBOR") published in the Wall Street Journal on certain quarterly Interest Change Dates, as defined in the promissory note evidencing this loan. Sometime thereafter, Imperial assigned the loan obligation to GE Capital.

---

[2]The facts summarized here do not appear to be in dispute. The Court has drawn these facts from GE Capital's motion to dismiss and the Debtors' disclosure statement.

[3]The Fairfield Property and Victorville Property are referred to collectively as the "Properties."

2

The Properties were each leased to an entity that operated a "Johnny Carino's" themed restaurant. The principal behind each restaurant entity as well as the former owner of the Properties is an individual named John Gantes ("Gantes"). GE Capital made working capital loans to Gantes in connection with his various business activities. On a date or dates that have not been disclosed, additional loans were made to the former owners of the Properties by LGCI Mortgage ("LGCI Mortgage"), and the loan obligations were secured by junior deeds of trust.

In mid-2008, GE Capital filed a civil action to enforce the working capital loans and obtained appointment of a receiver (the "Receiver") to take control of and operate the restaurant businesses located on the Properties. The Receiver collected the gross proceeds of the businesses and paid wages, taxes, and costs of goods but did not pay rent to the owners of the Properties. As a result, the owners were unable to pay debt service to GE Capital or to LCGI Mortgage.

Early in 2009, LGCI Mortgage issued notices of default. When the defaults were not cured, it issued notices of sale, scheduling foreclosure sales for May 2009. In April 2009, GE Capital issued notices of default and, when the defaults were not cured, issued notices of sale, scheduling foreclosure sales for September 2009. The LGCI Mortgage foreclosure sales were concluded prior to the sales scheduled by GE Capital. The Properties were sold to LGCI Mortgage pursuant to credit bids. However, title to the Fairfield Property was taken in the name of LCGI Fairfield, and title to the Victorville

Property was taken in the name of LCGI Victorville. Both LCGI Fairfield and LCGI Victorville are wholly owned subsidiaries of LCGI Mortgage. All three entities are affiliated with Lafayette Capital Group, Inc. ("Lafayette"), a commercial mortgage lender, which manages LCGI Mortgage.

LCGI Fairfield filed a chapter 11 petition on September 10, 2009. LCGI Victorville filed a chapter 11 petition on September 14, 2009. The chapter 11 filings stayed the foreclosure sales scheduled by GE Capital. The GE Capital receivership was terminated on or about September 25, 2009, and Gantes, through two of his entities, resumed control of the operation of the restaurants. The Debtors permitted Gantes to continue to lease the Properties upon payment of $15,000 per month rent on a triple net basis.[4]

On October 7, 2009, an order was entered providing for joint administration of the two chapter 11 cases. Schedules of Assets and Liabilities were filed in each case on September 16, 2009. The Schedules of Assets and Liabilities filed in Case No. 09-48466 T (the "Fairfield Case") valued the Fairfield Property at $2.5 million subject to a secured claim totaling approximately $1.3 million. No priority debts were scheduled, and only approximately $26,000 in general, unsecured claims were scheduled. The Schedules of Assets and Liabilities filed in Case No. 09-48617 T (the "Victorville Case") valued the Victorville Property at $2.75 million subject to a secured

---

[4] The Debtors have sequestered these rents which are cash collateral and could only be used with GE Capital's consent or Court order, neither of which has been obtained.

4

claim totaling approximately $2 million. No priority debts were scheduled and only approximately $17,000 in general, unsecured claims. The moving party, GE Capital, holds all of the secured debt of any significance in each case.

A status conference was conducted in the two cases on November 2, 2009. On October 29, 2009, the Debtors filed a joint status conference statement, acknowledging that the cases are "single asset real estate" cases. See 11 U.S.C. § 101(51B). A joint reorganization plan, unaccompanied by a disclosure statement, was filed on October 30, 2009. At the conclusion of the status conference, the Court set a December 15, 2009 deadline for the Debtors to file a disclosure statement and to submit it for conditional approval. The Debtors filed a joint disclosure statement on December 9, 2009 and submitted a proposed order conditionally approving it. The Court had some minor problems with the disclosure statement and denied conditional approval, giving the Debtors 30 days to amend the plan and disclosure statement.

An amended plan and disclosure statement and a motion for conditional approval were filed on December 23, 2009. On January 7, 2010, the Court issued an order conditionally approving the amended disclosure statement and scheduling a confirmation hearing on February 16, 2010. On January 26, 2010, GE Capital filed a motion to dismiss the two chapter 11 cases. The motion was noticed for hearing on February 16, 2010. On January 27, 2010, the Debtors filed an adversary proceeding against GE Capital, alleging, inter alia, that GE Capital had lost its security interest in the Properties

5

through its pre-petition collection activities. On February 8, 2010, GE Capital filed an objection to confirmation of the amended plan (the "Plan").[5]

At the conclusion of the confirmation hearing and hearing on GE Capital's motion to dismiss, the Court took the motion to dismiss under submission. The Court indicated that, if it decided not to dismiss the case, the confirmation hearing would have to be set for an evidentiary hearing.

**DISCUSSION**

GE Capital advances three grounds for its motion to dismiss. First, it contends that the bankruptcy case was filed in bad faith. Second, it contends that there are independent grounds to dismiss the case under 11 U.S.C. § 1112(b). Third, it contends that the Court should abstain from hearing the case under 11 U.S.C. § 305. The Debtors respond to these arguments and also assert that the motion is barred by laches. Each of these arguments is addressed below.

**1. Bad Faith Filing**

GE Capital asserts that the above-captioned chapter cases were filed in bad faith and that this constitutes grounds for dismissal. See In re Marsch, 36 F.3d 825 (9th Cir. 1994).[6] It notes that the

---

[5] A second amended plan was filed on January 28, 2010 and a third amended plan was filed on February 10, 2010. These amendments made minor changes to the Plan which are not relevant to the dispute presented here.

[6] In Marsch, the Ninth Circuit upheld the bankruptcy court's dismissal of a chapter 11 case as a bad faith filing where a judgment debtor had filed a chapter 11 petition to avoid posting an appeal bond from a state court judgment. The Marsch court observed that bad faith constituted cause for dismissal pursuant to 11

6

two chapter 11 cases are admittedly "single asset real estate" cases filed by entities which were created and took title to the Properties shortly before filing the chapter 11 cases. It notes that the monthly operating reports demonstrate that the Debtors have no ongoing business operations and no employees. Between the two of them, the Debtors have less than $47,000 in unsecured claims. GE Capital contends that these are classic indicia of a bad faith filing.

GE Capital also asserts that reorganization of the Debtors is not feasible. It notes that the Plan provides for only a one-time capital infusion of $100,000. Otherwise, the Debtors' sole source of income is from rents, which are GE Capital's cash collateral. However, according to GE Capital, the amount of the rents is inadequate to service GE Capital's secured claim. Moreover, according to GE Capital, the rents have not been paid with consistency since the filing of the case. GE Capital contends that the Plan presents it with an unacceptable risk.

Finally, GE Capital asserts that the cases are two party disputes between the Debtors and GE Capital and are not proper chapter 11 cases for that reason. It contends that the sole purpose of the filings was to stop GE Capital's foreclosure sales and to attempt to force GE Capital to accept lower payments calculated at a lower interest rate than required by GE Capital's existing loan obligations. GE Capital contends that bankruptcy was not intended

---

U.S.C. § 1112(b). Marsch, 36 F.3d at 828.

as an "alternate forum for private disputes," citing <u>In re Van Owen Car Wash, Inc.</u>, 82 B.R. 671, 673 (Bankr. C.D. Cal. 1988).[7]

GE Capital argues that, if the Court were to countenance this type of filing, there would be a flood of filings by junior secured creditors, attempting to gain an unfair advantage over senior secured creditors. It notes that, in <u>In re ACI Sunbow, LLC</u>, 206 B.R. 213 (Bankr. S.D. Cal. 1997), a similarly motivated chapter 11 filing was found to be in bad faith by the bankruptcy court.[8]

In response, the Debtors dispute GE Capital's contention that the cases were filed in bad faith. They contend that no bankruptcy filings were contemplated when the Debtors were created and acquired title to the Properties. To the contrary, it was Lafayette's normal procedure to take title in a separate entity when acquiring real property through a foreclosure sale. The purpose of the procedure

---

[7] In <u>Van Owen</u>, the bankruptcy court noted that the sole asset of the estate was a lawsuit against the former business associates of the principal of the debtor. It found that the real motivation for the filing "was the fear of the corporate insiders that the IRS would successfully move against them on their *individual liability* for unpaid withholding taxes of...[the debtor]." The court found that filing for this purpose was in bad faith and dismissed the case. <u>Van Owen</u>, 82 B.R. at 673.

[8] In <u>ACI Sunbow</u>, the debtor owned vacant land which it planned to develop as a subdivision. Ten years after the loan was made, a final map had not yet been recorded, and the tentative map was due to expire. Facing a foreclosure by the senior secured creditor, the principals of the owner bought the note secured by the junior deed of trust, foreclosed, and filed a chapter 11 petition. The debtor's chapter 11 plan proposed to stretch the secured creditor's obligation out six more years. These facts, taken together, caused the bankruptcy court to conclude that the case was a bad faith filing that should be dismissed. <u>ACI Sunbow</u>, 206 B.R. at 217-25.

8

was to protect investors in unrelated projects from exposure to claims not arising from their investment.

To the contrary, the Debtors assert, it is GE Capital that has acted in bad faith. First, prior to the commencement of the bankruptcy cases, the Receiver collected all of the proceeds from the restaurant businesses, paid none of the proceeds as rent to the owners or debt service to the Debtors, and has never accounted for the application of the funds. Second, despite having lost its security interest in the Properties through its pre-petition conduct, GE Capital initiated foreclosure proceedings against the Properties. Third, after the Debtors filed their initial reorganization plan, which relied upon rent to be paid by entities owned by Gantes, GE Capital apparently induced Gantes to stop paying rent to the Debtors and to refuse to enter into a lease for the Properties. This has forced the Debtors to agree to increase their capital infusion to fund the Plan to $500,000.

The Debtors assert that a "single asset real estate" case is not, by definition, a bad faith filing. They note that, in response to a wave of such filings, in the early 90s, Congress enacted 11 U.S.C. § 362(d)(3). Section 362(d)(3) sets a prompt deadline, requiring either payments on the secured debt to begin or a plan to be filed that can be confirmed within a reasonable period of time. This statutory device eliminates the perceived abuse of such filings. The Debtors cite two bankruptcy court decisions in which motions to dismiss and for relief from the automatic stay were denied on this basis. See In re Cambridge Woodbridge Apartments, LLC, 292 B.R. 832,

9

838 (Bankr. N.D. Ohio 2003); In re Jacksonville Riverfront Dev., 215 B.R. 239, 244 (Bankr. M.D. Fla. 1997).[9]

The Debtors also deny that these are classic "new debtor syndrome" cases. They note that, in Matter of N.R.G. Investments, Inc., 99 B.R. 475, 476 (Bankr. M.D. Fla. 1989), the court concluded that a chapter 11 case filed by a foreclosing junior lienholder to preserve its equity in its collateral did not qualify as a "new debtor syndrome" filing.[10] They also note that the Debtors were not formed on the eve of bankruptcy. They were formed four months before the chapter 11 filings and for business reasons independent of the bankruptcy filing.

Finally, the Debtors argue, the filings are not merely futile efforts to delay foreclosure. The Debtors' principals have committed up to $500,000 to fund the Plan. Even before 11 U.S.C. § 362(d)(3) was enacted, "single asset real estate" cases were permitted to reorganize through chapter 11 when there were sufficient funds

---

[9] In Cambridge Woodbridge, in which the debtor owned a 15 building, 180 unit apartment building, the court noted that, by enacting § 362(d)(3), Congress indicated that it did not intend "to preclude debtors involved in...["single asset real estate" cases] from the relief afforded by Chapter 11...." 292 B.R. at 838. A similar comment was made by the court in Jacksonville Riverfront, in which the debtor leased the subject real property to third parties at a positive cash flow but did not have sufficient funds to pay a balloon payment on the secured debt. 215 B.R. at 241-44. This does not mean that the indicia of bad faith filings established by case law in "single asset real estate" cases filed before the enactment of § 362(d)(3) are no longer relevant. See In re State Street Houses, Inc., 356 F.3d 1345, 1347 (11th Cir. 2004).

[10] In N.R.G. Investments, a creditor with a junior security interest on a shopping center, described by the court as an "albatross," filed for chapter 11 after obtaining title to the property at the foreclosure sale. 99 B.R. at 476.

10

available to make adequate protection payments. See In re Beach Club, 22 B.R. 597 (Bankr. N.D. Cal. 1982); In re Victory Construction, Inc., 37 B.R. 222 (Bankr. 9th Cir. 1984).[11]

Based on the foregoing, the Court is unable to conclude that the above-captioned cases were filed in bad faith. The Court agrees with cases cited above that the enactment of § 362(d)(3) infers that "single asset real estate" cases are not per se impermissible. By definition, these cases usually involve few unsecured creditors. Frequently, the debtors themselves have no business operations and no or few employees. Based on the values placed in the Debtors' Schedules of Assets and Liabilities, the Debtors appear to have equity in each of the Properties. GE Capital has presented no evidence that these values are inflated. Moreover, the Debtors propose to advance substantial new funds to permit a reorganization plan to be confirmed. While the Properties were transferred to newly

---

[11] In Beach Club, the real property subject to the chapter 11 case was transferred to a newly created limited partnership shortly before filing to avoid jeopardizing other development projects. The Beach Club court noted that, while an eve-of-bankruptcy transfer will cause the court to "raise its eyebrows," it will not necessarily result in a finding of bad faith where there is equity in the real property, the objecting lender is not prejudiced, and there is a reasonable chance of reorganization. 22 B.R. at 599-600. In Victory Construction, the bankruptcy court granted relief from stay to a secured creditor in a "single asset real estate" case, based on the finding that the case was filed in bad faith, but granted a stay of the order pending appeal, provided the debtor performed certain acts comparable to adequate protection of the security interest. The appellate court reversed and remanded, finding that, after the appeal was filed, during the ongoing administration of the estate, the debtor had "'purged' itself of bad faith" by proposing a feasible confirmation plan. 37 B.R. at 226-28.

11

created entities, there is no evidence that GE Capital would have had any greater rights had the former holder of the junior security interest filed for chapter 11 itself.[12]

**2. Factors Established by 11 U.S.C. § 1112(b)**

GE Capital also contends that the cases should be dismissed based on other factors identified in 11 U.S.C. § 1112(b). Section 1112(b) requires the Court to convert a chapter 11 case to chapter 7 or to dismiss it, on request of a party in interest, if one of a list of factors is established. One of those factors is the debtor's inability to confirm a plan. GE Capital contends that the Debtors are unable to confirm a plan because the proposed treatment of its claim in the Plan does not satisfy 11 U.S.C. § 1129(a)(7). Section 1129(a)(7) provides that any creditor whose claim is impaired and has voted against the plan must receive or retain property of a value not less than what the creditor would receive in a chapter 7 case.

GE Capital notes that the Plan proposes to make payments to it from rents paid by the tenants of the Properties. It contends that the Debtors have no other assets to fund the Plan. GE Capital notes that it holds a security interest in the rents as well as the Properties. Therefore, the Plan simply gives GE Capital the right to receive or retain money or property which it already has the right to receive or retain with no risk of a future default. It contends

---

[12] As stated in Beach Club: "To find bad faith here would be tantamount to saying that it would be preferable to wreck...[the assignor of the real property interest] to obtain for plaintiff a similar if not identical disposition that is obtainable here, and would further award plaintiff a substantial windfall of property equity." 22 B.R. at 600.

12

that there is no plan that the Debtors could propose that would put GE Capital in a better position than it would be in a chapter 7 liquidation.

This argument fails for at least two reasons. If the Plan is confirmed, the rents will not be the sole source of payments to GE Capital. The Debtors have a commitment for a $500,000 cash infusion to assist in paying debt service to GE Capital. Second, to be confirmed, the Plan need not put GE Capital in a better position than it would enjoy in a chapter 7 case. It must merely propose to pay GE Capital at least as much as it would receive in a chapter 7 case.

**3.   Abstention Under 11 U.S.C. § 305**

Finally, GE Capital asks the Court to abstain from these chapter 11 cases pursuant to 11 U.S.C. § 305(a)(1) on the ground that the cases are simply two party disputes and that the interests of creditors would be better served by dismissal. GE Capital contends that it is the sole creditor impacted by the bankruptcy proceedings. Clearly, its interests would be better served by dismissal. The only other secured creditors, the property tax claimants, are senior to GE Capital and would not be affected by GE Capital's foreclosure proceedings. GE Capital contends that the Debtors' interests are illegitimate because they were acquired from another entity shortly before the bankruptcy filing.[13]

---

[13] At the hearing on the motion, it represented that it would pay the unsecured creditors after dismissal and foreclosure (presumably on a voluntary basis) because "it was the right thing to do." The Court finds this comment disingenuous and unreliable.

13

GE Capital's final argument is unpersuasive. If these cases are two party disputes, which the Court should abstain from hearing, virtually every "single asset real estate" case is likewise subject to abstention. As discussed above, this is not the natural inference from the enactment of § 362(d)(3). Clearly, abstention would not be in the Debtors' best interests nor in the best interests of the unsecured creditors. There appears to be substantial equity in the Properties, and the Court cannot conclude at this time that the Plan, or some amendment of it, is unconfirmable. As a result, the motion will be denied.

**4. Laches**

The Debtors contend that the motion should be denied because GE Capital has waited too long to file it. They note that the cases were filed early last fall. Since then, they have expended substantial time and energy to formulate a plan and disclosure statement and bring it to the point of confirmation. If GE Capital had wanted to bring a motion to dismiss on the grounds of bad faith, the motion should have been filed promptly after the cases were filed.

The Court agrees that GE Capital's motion would have been more persuasive if filed at an earlier time. Given the grounds stated for the motion, the delay is puzzling. However, the Court concludes that, without regard to the timing of its filing, the motion does not state a sufficient ground for dismissal. Therefore, the Court does not base its denial of the motion on this ground.

**CONCLUSION**

14

The Court concludes that, based on the evidence presented to date, these chapter 11 cases do not appear to have been filed in bad faith and will not be dismissed on that ground.  Moreover, the Plan does not appear to violate 11 U.S.C. § 1129(a)(7).  The Court is not persuaded that the cases are merely two party disputes which it should abstain to hear pursuant to 11 U.S.C. § 305.  The Debtors' argument that the motion is barred by laches has some merit.  However, the Court does not base its denial of the motion on this ground.

Debtors' counsel are directed to submit a proposed form of order denying the motion to dismiss.  Counsel for the Debtors and counsel for GE Capital are directed to meet and confer concerning an appropriate date for the evidentiary hearing on confirmation and other appropriate deadlines.  A telephone conference may be scheduled if the Court's intervention is required to establish these matters.

END OF DOCUMENT

15

COURT SERVICE LIST

John H. MacConaghy
MacConaghy and Barnier
645 1st St. W #D
Sonoma, CA 95476

Mike C. Buckley
Reed Smith LLP
101 Second St., Ste. 1800
San Francisco, CA 94105-3659

16